UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROBERT PILCHMAN,

                            Plaintiff,

                                                                10 CV 4976 (KMW)
            -against-                                           OPINION & ORDER

AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES,
AFL-CIO, DISTRICT COUNCIL 37
LEGAL SERVICES, INC., DC 37, and
BROOKLYN LIBRARY GUILD LOCAL 1482

                            Defendants.
------------------------------------------------------------x
WOOD, U.S.D.J.:

        Plaintiff Robert Pilchman ("Pilchman") brings this action against the American

Federation of State, County, and Municipal Employees, AFL-CIO ("AFL-CIO"), New York

District Council of AFSCME Municipal Local Unions, Council 37 of the American Federation

of State, County, and Municipal Employees ("DC 37"), and its local affiliate, Brooklyn Library

Guild Local 1482 (collectively, "the Union"),[1] for (1) breach of the duty of fair representation,

and (2) breach of the collective bargaining agreement between the Union and Pilchman's

employer, the Brooklyn Public Library ("the Library").  Pilchman's claims are based on the

Union's alleged failure to properly represent him in three separate grievances that Pilchman

brought against the Library, one in November 2008 and two in March 2010.

        The Union moves to dismiss both claims for failure to state a claim, pursuant to Federal

Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and for failure to join a required party,

---

[1] Pilchman named "District Council 37 Legal Services, Inc.," in addition to DC 37, as a party to
this lawsuit.  According to the Union, District Council 37 Legal Services, Inc. is a non-existent
entity.  (*See* Dkt. No. 20.)  Pilchman has not responded to this assertion in his reply briefing, nor
has he ever made any allegations that would indicate that these parties are separate entities.
Accordingly, the Court concludes that "District Council 37 Legal Services, Inc." is not a
defendant in this action.

pursuant to Federal Rule of Civil Procedure 12(b)(7) ("Rule 12(b)(7)").  Pilchman opposes the

motion and requests leave to file a Third Amended Complaint.

For the following reasons, the Court GRANTS the Union's motion to dismiss and

DENIES Pilchman's request for leave to file a Third Amended Complaint.

# I.  Background[2]

Pilchman is an employee of the Library. (Compl. ¶ 11.)  He is also a dues-paying member

of Brooklyn Library Guild Local 1482, which represents employees of the Library's branches.

(Compl. ¶ 10.)  Brooklyn Library Guild Local 1482 is one of 56 unions that comprise DC 37,

New York City's largest public-employee union.  DC 37 is a member of the AFL-CIO.

## A.  <u>November 2008 Grievance</u>

In or about November 2008, Pilchman filed a grievance ("November 2008 Grievance")

with the Union, alleging that the Library "fail[ed] to provide [him] with due process in his appeal

of a promotion."  (Compl. ¶ 16.)  On or about May 18, 2009, Pilchman met with three Union

employees to discuss his grievance: Eileen Muller, Brooklyn Library Guild President ("Muller");

Phyllis Streeter, Council Representative of DC 37's Professional Division ("Streeter"); and

Steven Sykes, Senior Assistant General Counsel of DC 37 ("Sykes").  (Compl. ¶ 15.)  During

that meeting, Sykes told Pilchman that "the union would not allow the Library to retaliate against

him."  (Compl. ¶ 17.)

After some months, the Union and the Library negotiated a settlement agreement, which

Pilchman signed and mailed to Sykes on September 23, 2009.  (Compl. ¶ 18; Declaration of

Nelson M. Stern in Opp. to the Mot. to Dismiss ("Stern Decl.") Ex. 5.)  On October 2, 2009,

Sykes sent Pilchman an email to confirm receipt of the signed agreement, in which he wrote,

---

[2] The following facts are taken from Pilchman's Second Amended Complaint ("Compl.") and are
assumed to be true for purposes of the Union's motion to dismiss.  *See Tellabs, Inc. v. Makor
Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

"[p]lease let me know if you want me to forward the settlement to the Library." (Compl. ¶ 19; Stern Decl. Ex. 5.)  On April 19, 2010, Pilchman emailed Sykes and asked, "I don't recall the mentioning about actually forwarding any settlement to the library – did we decide on this?" Sykes replied on April 20, 2010, stating: "Subsequent to our email correspondence below and after numerous conversations with both you and your private attorney you instructed me to forward the settlement agreement to the Library.  I did so and the agreement was fully executed in January 2010."  (Stern Decl. Ex. 5.)[3]  Pilchman now alleges that he did not authorize Sykes to forward the agreement.  (Compl. ¶ 20.)

### B. March 2010 Grievances

While resolution of the November 2008 Grievance was pending, Pilchman applied for another promotion.  On December 18, 2009, he submitted an application for the position of Library Information Supervisor at a different branch of the Library.  (Compl. ¶ 25.)  Pilchman interviewed for the position on January 13, 2010 and was notified six days later that another applicant had been selected because "he was better suited for the position."  (*Id.*)  On January 25, 2010, Pilchman appealed the Library's decision by emailing Dionne Mack Harvin, Executive Director of the Library ("Mack Harvin").  (*Id.*)  According to the Library's Policy and Procedure Manual, "[e]ach appellant shall be granted a hearing before the Director within 15 work days after such appeal."  (*Id.*; Compl. Ex. 3, at 5.)  However, Pilchman did not receive a response to his email, other than a "read receipt," an automatic email notification stating that his email had been received, until February 24, 2010, twenty-two business days after submitting his appeal. (Compl. ¶ 25.)  An appeals hearing was held before Mack Harvin on March 3, 2010.  (*Id.*)  The

---

[3] Although Sykes' April 20, 2010 email makes reference to communications occurring between October 2, 2009 and April 19, 2010, the email correspondence Pilchman submitted does not include any emails between those dates.

following day, Mack Harvin issued a letter in which she refused to reverse the hiring decision. (*Id.*)

On February 23, 2010, while his appeal was pending, Pilchman was given an unsatisfactory service rating "[f]or the first time in his 12 + year career." (Compl. ¶ 21.) The following day, he received an email notifying him that, as a result of the rating, he could not apply for another promotion for one year. (Compl. ¶ 25, Ex. 1, at 4.) On or about March 2, 2010, Pilchman sent an email to the Library's Board of Trustees, in which he disputed his service rating and stated that "Dionne Mack-Harvin has apparently has[sic] a pattern of behavior with Orthodox Jewish employees/communities." (Compl. ¶ 25, Ex. 1, at 5.) Pilchman also stated that one of the two supervisors responsible for the rating "admitted that . . . Pilchman received the rating that he did because he appealed" the Library's decision to select another candidate for Library Information Supervisor. (*Id.*)

On March 11, 2010, Pilchman met with Muller, Streeter, and Maynard Anderson, Director of DC 37's Professional Division, to discuss the denial of his appeal and his unsatisfactory service rating. (Compl. ¶ 38.) At the meeting, Streeter asked Pilchman to explain the basis for his allegation to the Board of Trustees that Mack Harvin "ha[d] a pattern of behavior with Orthodox Jewish employees/communities." (Compl. ¶ 51.) Pilchman stated that "there was another employee (Orthodox Jewish) who apparently was unfairly fired by [Mack Harvin] earlier in her career." (Compl. ¶ 52.) Ultimately, the Union declined to grieve Pilchman's failed appeal of the promotion decision, and offered the following reasons for its decision: "none of the information [Pilchman] provided to the Union provides examples of retaliation by the Library" (Compl. ¶ 26); "there is no entitlement to a promotion" (Compl. ¶ 29); and "the Library fulfilled its legal obligation" when it explained to Pilchman that he was not

offered the job because the selected candidate was better suited for the position.  (Compl. ¶ 32.)
The Union also declined to grieve Mack Harvin's delayed response to Pilchman's appeal, stating
that it "was not able to determine whether or not . . . Mack Harvin was on vacation" when Mack
Harvin received the appeal.  (Compl. ¶ 36.)

The Union did, however, agree to grieve Pilchman's unsatisfactory service rating.
(Compl. ¶ 40.)  The Union "compos[ed] and submit[ted] a grievance paper," which Pilchman
signed in Muller's presence on March 15, 2010.  (*Id.*)  Pilchman states that at the time he signed
the grievance form, Muller showed him only the first page of the two-page document and failed
to inform him that a second page existed.  (Compl. ¶¶ 40-41.)  In what appears to be a response
to an inquiry from Pilchman, Sykes, who was not present at the time Pilchman signed the form
but relied on Muller's version of the events, wrote a letter stating: "There is no requirement that
all pages of a grievance form are signed.  Moreover, Mr. Pilchman was shown both pages, and
he read both pages, in the presence of his union representative, prior to signing the grievance."
(Compl. ¶ 46.)

Pilchman also submitted a formal rebuttal of his service rating approximately two weeks
after receiving the rating.  (Compl. ¶ 28, Ex. 1.)  The Union had informed the Library that
Pilchman would submit the rebuttal within two weeks, "despite the long-standing protocol of
having 30 days" to submit rebuttals.  (Compl. ¶ 28.)  At the time the Union submitted the instant
motion, an appeal of Pilchman's service rating was scheduled for arbitration.

## II.  Legal Standards

### A.  <u>Rule 12(b)(6) Motion to Dismiss Standard</u>

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead
sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009). If a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 129 S.Ct. at 1950 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)) (brackets in original)). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation omitted).

### B. <u>What Documents May Be Considered</u>

Although a district court's analysis of a motion to dismiss is confined to "the allegations contained within the four corners of [the] complaint," *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), a court may also examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Moreover, the Court may consider documents not incorporated by reference if "the complaint relies heavily upon its terms and

effect, which renders the document integral to the complaint," *id.* at 153, provided that the

plaintiff has notice of such documents.  *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48

(2d Cir. 1991).

Pilchman has attached the following documents to his Complaint, all of which are also

incorporated by reference: a copy of the rebuttal to his unsatisfactory service rating (Exhibit 1); a

series of emails regarding Union representative Eileen Muller (Exhibit 2); and sections of the

Library's Policy and Procedure Manual regarding promotions (Exhibit 3) and service ratings

(Exhibit 4).  The Court will consider these documents to the extent that they are relevant to

disposing of the instant motion.

Pilchman has also submitted, by affidavit, eight exhibits containing email correspondence

between himself and Union representatives.  (*See* Stern Decl. Ex. 1-8.)  Exhibits 1-4 and 6

contain emails that post-date the Second Amended Complaint and therefore could not have been

relied upon at the time the Complaint was drafted.  Since these documents are not "integral to the

complaint," *Chambers*, 282 F.3d at 153, the Court will not consider them in deciding the

motion.[4]  Exhibits 7 and 8 contain communications that slightly pre-date the Second Amended

Complaint, but they are neither referenced nor relied upon in it.[5]  The Court will therefore

exclude these documents from consideration.  *See id.* ("[A] plaintiff's *reliance* on the terms and

effect of a document in drafting the complaint is a necessary prerequisite to the court's

---

[4] If the court were to consider evidence upon which the Complaint does not rely, it would need to
convert the motion to dismiss to a motion for summary judgment, and delay consideration of the
motion until both sides have had a reasonable opportunity to present pertinent evidence.  Fed. R.
Civ. P. 12(d).  Conversion is inappropriate at this stage because discovery has not yet taken
place.  *See* 2 James Wm. Moore, *Moore's Federal Practice* § 12.34[3][a] (3d ed. 2006) (noting
the "limited utility" of conversion where discovery may be required).

[5] In fact, Pilchman did not add any new claims or facts to either his First or his Second Amended
Complaints after filing his original Complaint.  The only substantive change he has made has
been to remove a fraud claim contained in his original and First Amended Complaints.

consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original).  However, Exhibit 5 contains, in part, emails concerning the settlement of the November 2008 Grievance that are either directly quoted or incorporated by reference in all three versions of Pilchman's Complaint.  (Compl. ¶¶ 19-20, 26, 29.)[6]  Those emails may therefore be considered on this motion to dismiss.

The Complaint also incorporates by reference the Collective Bargaining Agreement ("CBA") and the agreement settling the November 2008 Grievance, both of which are attached to Defendants' motion to dismiss as Exhibits 2 and 3, respectively.[7]  The Court will consider the contents of those documents to the extent that they are relevant to the disposition of this motion.

## III.  Discussion

### A.  <u>Nature of Plaintiff's Action</u>

Pilchman brings two claims against the Union: (1) breach of the duty of fair representation, and (2) breach of the collective bargaining agreement.  Before the Court can address the merits of those claims, it must first determine the laws under which they arise.  With respect to his first claim, Pilchman cites the National Labor Relations Act ("NRLA") and the "Fair Labor Relations Act" as the statutes under which a union's duty of fair representation

---

[6] The first email in Exhibit 5, dated October 25, 2010, post-dates the Second Amended Complaint and will therefore be excluded in its entirety.  The second email, dated October 17, 2010, also post-dates the Second Amended Complaint but appears to forward an email chain that begins on April 20, 2010 and goes back in time to August 7, 2009.  This forwarded email chain pre-dates the original Complaint, is incorporated into it by reference, and is properly considered on this motion. (*See* Compl. ¶¶ 19-20, 26, 29.)  However, the Court will exclude the top portion of the October 17, 2010 email—*i.e.*, the content that is not a part of the forwarded email chain—when considering the instant motion.

[7] Although Plaintiff did not attach these documents to his Complaint, he refers to both of them extensively throughout the Complaint.  He also quotes directly from the CBA to support his claims.

arises.  This obligation does arise under the NRLA; however, the "Fair Labor Relations Act" does not exist.[8]  Pilchman does not state the basis for his second claim, breach of the CBA.

Defendants argue that, although Pilchman does not expressly so state, he intends to bring a single "hybrid § 301/fair representation" claim instead of the two separate claims described above.[9]  Defendants maintain that Pilchman's two claims are identical to the two elements of a hybrid § 301/fair representation suit, in which a plaintiff must show that (1) his union breached its duty of fair representation, and (2) his employer breached a CBA.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).  Although Pilchman's two claims resemble these elements, the Court will not assume that he intends to bring a hybrid § 301/fair representation action.

First, a proper hybrid § 301/fair representation action alleges breach of the duty of fair representation by a *union* and a breach of the CBA by the *employer*.  Pilchman alleges a breach of the CBA by his union, and not by the Library.  Second, Pilchman has never explicitly or

---

[8] Although the Fair Labor Relations Act is linguistically similar to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, it is unlikely that Pilchman is referring to the FLSA because that statute, which governs minimum wage and overtime pay, is wholly unrelated to his claims.

[9] Although formally comprised of two separate causes of action, a hybrid § 301/fair representation action is a suit in which an employee alleges that an employer has breached a CBA and that a union has breached its duty of fair representation by failing to enforce the CBA. The suit combines Section 301 of the Labor Management Relations Act, 29 U.S.C. § 1985, which governs suits for violation of contracts between an employer and a labor organization, with § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), which grants unions exclusive representational status over members of the relevant bargaining unit and from which courts have implied a union's duty to fairly represent its members.  *See DelCostello*, 462 U.S. at 164 n.14 ("The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative.  In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'") (quoting *Vaca v. Snipes*, 386 U.S. 171, 177 (1967)).

implicitly argued that he intends to bring a hybrid suit.  Third, the Union has argued previously

that Pilchman intended to bring a hybrid action in its Motion to Dismiss the First Amended

Complaint, even highlighting the inexistence of the "Fair Labor Relations Act" (*see* Dkt. No.

15), but Pilchman never revised the basis for his claims in his Second Amended Complaint.

Fourth, the Court does not need to restyle this action as a hybrid § 301/fair representation suit to

properly assess Pilchman's claims.  His first claim—breach of the duty of fair representation—is

appropriately analyzed under § 9(a) of the NRLA.[10]  His second claim—breach of the CBA—is a

straightforward breach of contract claim under the common law.

    **B.  <u>Breach of the Duty of Fair Representation</u>**

        *a.  Statute of Limitations*

           i.  <u>Applicable Law</u>

The statute of limitations period for a claim alleging breach of the duty of fair

representation is six months from the date on which the cause of action accrued.  *Eatz v. DME

Unit of Local Union No. 3*, 794 F.2d 29, 33 (2d Cir. 1986).  The *Eatz* court derived this

limitations period from claims of unfair labor practices brought under NLRA § 10(b).  *Id.* ("Due

to the undeniable resemblance and substantial overlap between unfair labor practices and

breaches of the duty of fair representation . . . we . . . require that the § 10(b) six-month

limitations period also be applied to unfair representation claims standing alone.").

The Union argues that because NRLA § 10(b)'s limitations period was applied to unfair

representation claims, the statute's rules on filing and service should also apply.  NRLA § 10(b)

---

[10] The Court notes that its analysis of Pilchman's breach of the duty of fair representation claim
is the same as it would be in a hybrid § 301/fair representation action.  In both instances, section
9(a) of the NLRA is the source of a union's obligation to fairly represent its members.  *See
DelCostello*, 462 U.S. at 164 (analyzing a hybrid § 301/fair representation suit and noting that
the element of "breach of the union's duty of fair representation . . . is implied under the scheme
of the National Labor Relations Act").

requires that filing and service be made within the six-month limitations period to be valid. 28 U.S.C. § 160(b) ("[N]o complaint shall issue . . . more than six months prior to the filing of the charge . . . *and the service* of a copy . . . upon the person against whom such charge is made.") (emphasis added). The Court rejects this assertion because the United States Supreme Court has made it clear that "when the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been 'commenced' in compliance with Rule 3 [of the Federal Rules of Civil Procedure] within the borrowed period." *West v. Conrail*, 481 U.S. 35, 39, 107 S.Ct. 1538 (1987). Pursuant to Rule 3, a complaint must be filed, but need not be served, within the relevant limitations period. *See* Fed R. Civ. P. 3. Therefore, a plaintiff alleging a breach of the duty of fair representation must only *file* his complaint within six months of the date on which the cause of action accrued. Failure to *serve* the complaint within that period will not time-bar the action.

A cause of action ordinarily accrues when a "plaintiff could first have successfully maintained a suit based on that cause of action." *Santos v. Dist. Council of New York City*, 619 F.2d 963, 968-69 (2d Cir. 1980) (citations omitted). The date of accrual for actions alleging breach of the duty of fair representation is measured from "no later than the time when plaintiff knew or reasonably should have known that . . . a breach had occurred, even if some possibility of nonjudicial enforcement remained." *Id.* at 969; *see also King v. N.Y. Tel. Co.*, 785 F.2d 31, 34 (2d Cir. 1986).

ii.  Application of Law to Facts

The Union argues that Pilchman's claim, at least as it relates to the November 2008 Grievance, is time-barred because "[t]he basis for the underlying action appears to be the fact

11

that the Library denied Plaintiff's promotion in 2008" and "settlement [of that grievance] was reached more than six months before Plaintiff filed and served the underlying Complaint." (Mem. of Law in Support of Defs.' Mot. to Dismiss (hereinafter "Def. Mem.") at 7.)  The Union therefore argues that because the Complaint was served on August 12, 2010, any claim based on facts that occurred prior to February 12, 2010 should be dismissed. (*Id.*)  For the following reasons, the Court holds that Pilchman's claim is not time-barred.

As an initial matter, the Union erroneously argues that the date of service of the Complaint is the relevant date from which to measure the limitations period.  As the Court has explained, a plaintiff alleging breach of the duty of fair representation must file, but need not serve, his complaint within six months of the date on which the cause of action accrued. Pilchman filed his original Complaint on June 28, 2010.  Therefore, the limitations period must have began, at the earliest, on December 28, 2009 and not, as the Union argues, February 12, 2010.

The Union argues that Pilchman's cause of action accrued in November 2008, when he filed a grievance against the Library for not providing due process in his appeal of a promotion. (Def. Mem. at 7-8.)  However, that date marks the point at which Pilchman was aware of only the *Library's*, and not the Union's, alleged failure to provide due process.  There is no indication that in November 2008, Pilchman was aware that the Union may have breached its duty to represent him fairly, especially since the Union would have just begun pursuing his grievance. According to Pilchman, settlement of the November 2008 grievance was not finalized until January 2010, without his authorization.  (Compl. ¶ 20.)  Pilchman states that he was made aware of the final settlement only in April 2010, by email from a union representative.  (*Id.*; *see also* Stern Decl. Ex. 5.)  Insofar as Pilchman alleges that the Union breached its duty of fair

representation by finalizing a settlement agreement without his authorization, the correct date of accrual would be in April 2010, when he was first made aware that the settlement had been finalized without his approval.  Because Pilchman's cause of action with respect to the November 2008 Grievance accrued, at the earliest, in April 2010, and Pilchman filed his Complaint on June 28, 2010, he brought his action well within the six-month limitations period. Therefore, Pilchman's claim is not time-barred.[11]

### b.  *Failure to State a Claim*

#### i.  Applicable Law

A breach of the duty of fair representation occurs when a union fails to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid any arbitrary conduct."  *Vaca v. Snipes*, 386 U.S. 171, 177 (1967) (citations omitted).  "Mere negligence, even in the enforcement of a collective bargaining agreement," is not enough to constitute a breach of this duty.  *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990); *see also Cruz v. Local Union No. 3*, 34 F.3d 1148, 1153-54 (2d Cir. 1994).  Instead, "arbitrary or bad-faith conduct . . . or substantial evidence of fraud, deceitful action or dishonest conduct . . . is required to show a breach of the duty of fair representation."  *Ryan v. N.Y. Newspaper Printing Pressman's Union No. 2*, 590 F.2d 451, 455 (2d Cir. 1979) (citations and internal quotation marks omitted).

To prevail on a claim for breach of the duty of fair representation, a plaintiff must demonstrate that: (1) the union's conduct towards the plaintiff was "arbitrary, discriminatory, or in bad faith" and (2) there was a "causal connection between the union's wrongful conduct and the [plaintiff's] injuries."  *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (citations

---

[11] Of course, Pilchman's claim as it relates to the March 2010 Grievance is also not time-barred. The facts giving rise to those alleged breaches occurred in January–March 2010, well after December 28, 2009, the earliest date on which the limitations period must have begun.

omitted).  A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citations and internal quotation marks omitted).  A union's conduct is discriminatory when the union "without a legitimate purpose, take[s] action favoring some of its members at the expense of others." *Ramey v. Dist. 141*, 378 F.3d 269, 277 (2d Cir. 2004) (citations omitted).  A union acts in bad faith when it "acts with an improper intent, purpose, or motive.  Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct." *Spellacy v. Air Line Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (citations omitted).

## ii.  Application of Law to Facts

Pilchman describes a variety of actions taken by the Union that he alleges were arbitrary, discriminatory, or made in bad faith.  A fair and lenient reading of Pilchman's Complaint, construed in the light most favorable to him and drawing all reasonable inferences in his favor, fails to suggest any facts that would support a finding that any of these actions "remotely approach[ ] the onerous standards of irrationality, unlawfulness or deceit necessary" to state a claim for the breach of the duty of fair representation.  *Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 595 (S.D.N.Y. 2006) (Marrero, J.).  For the following reasons, the Court dismisses Pilchman's claim.

### 1.  Unauthorized Execution of Settlement

Pilchman alleges that the Union breached its duty of fair representation when the Union's general counsel, Sykes, forwarded to the Library the agreement settling the November 2008 Grievance without first obtaining Pilchman's approval.[12]  Pilchman states that on October 2,

---

[12] Although Pilchman does not expressly so state in his Complaint, the Court assumes that the crux of his allegation is that the Union, in forwarding the signed agreement to the Library,

2009, he received an email from Sykes that read: "'I received the stipulation of settlement you

signed.  Please let me know if you want me to forward the settlement to the Library.'"  (Compl. ¶

19.)  Pilchman alleges that "[a]lthough plaintiff did not authorize [Sykes] to forward the

settlement, in an email communication from [Sykes] to [Plaintiff] it states that 'the agreement

was fully executed in January 2010.'  Defendant's conduct was in bad faith."  (Compl. ¶ 20.)

These bare allegations provide no basis for the Court to reasonably infer that the Union acted in

bad faith when it forwarded the settlement without Pilchman's approval.  Nor does a fuller

examination of the email chain from which the Complaint quotes redeem the Complaint's

deficiencies.  Nothing in the correspondence suggests that the Union acted in bad faith.  To the

contrary, the emails undermine that allegation, and even suggest that Pilchman may have

authorized the settlement and simply does not recall doing so: in an email to Sykes, Pilchman

asks, "I don't recall the mentioning about actually forwarding any settlement to the library – did

we decide on this?"  Sykes replies: "Subsequent to our email correspondence below and after

numerous conversations with both you and your private attorney, you instructed me to forward

the settlement agreement to the Library.  I did so and the agreement was fully executed in

January 2010."  (Stern Decl. Ex. 5.)

　　　　A union acts in bad faith when it "acts with an improper intent, purpose, or motive."

*Spellacy*, 156 F.3d at 126.  Even assuming that the Union executed the agreement without

Pilchman's authorization by forwarding it to the Library after Pilchman signed it, Pilchman has

not alleged any facts to support the claim that Sykes forwarded that agreement *with an improper*

finalized the settlement without Pilchman's approval.  This understanding is based on Plaintiff's
Memorandum of Law in Opposition to the Motion to Dismiss [hereinafter "Pl. Opp. Mem."],
which refers to "the *unauthorized* execution of a settlement in January 2010 (-the relief of which
has still not apparently materialized)."  (Pl. Opp. Mem. at 8.) (emphasis in original).  Notably,
Pilchman does not allege that he never signed the agreement.  To the contrary, the email
correspondence Pilchman submitted in support of his claims contains an email in which he
states, "Yesterday I signed the settlement and mailed it to you (reluctantly)."  (Stern Decl. Ex. 5.)

*intent, purpose, or motive*.  He summarily states that the Union's conduct was in bad faith, (Compl. ¶ 20), but without any supporting facts, this assertion is insufficient to state a claim for breach of the duty of fair representation.  *See Stoner v. Walsh*, 772 F. Supp. 790, 806-07 (S.D.N.Y. 1991) (Mukasey, J.) ("[C]onclusory allegations of 'bad faith' are insufficient to survive a motion to dismiss.  Rather, the complaint must state some set of facts from which it may be inferred that the [defendant's] actions might have been motivated by an improper purpose.").

2.   *Failure to Grieve the Library's Violations of Its Promotion Policy*

Pilchman alleges that the Union arbitrarily and in bad faith failed to grieve the Library's "repeated violation[s] of the promotions policy."  (Compl. ¶ 29.)  He describes two such violations: (1) the Library's failure to notify him "of the reasons why [he] was not selected for promotion" to the position of Library Information Supervisor; and (2) the Library's delayed response to his request for an appeal of that hiring decision. (Compl. ¶ 32, 34.)  This set of allegations is insufficient to state a claim for the breach of duty of fair representation.  In each case, the facts alleged do not demonstrate plausibly that the Union's decisions not to grieve Pilchman's complaints were in bad faith or "so far outside a wide range of reasonableness . . . as to be irrational."  *O'Neill*, 499 U.S. at 67 (defining arbitrary conduct by a union).

With respect to the Library's failure to provide the reasons for its hiring decision, Pilchman's own factual allegations defeat his claim.  The Library's promotion policy provides: "[e]ach eligible applicant for promotion who is not promoted shall be notified in writing by the Library of the reasons why he/she was not selected for promotion and informed as to who was promoted . . . ." (Compl. Ex. 3, at 5.)  Pilchman's allegations show that the Library followed its

16

procedure.  He states that he was told that "'[t]he candidate that was selected [Robert Simic] was better suited for this position" (Compl. ¶ 32), which is precisely the type of explanation to which he was entitled under the policy.  The Union's conclusion "that the Library fulfilled its legal obligation" (*id.*) was therefore neither unreasonable nor irrational.  Pilchman may be unsatisfied with the Library's explanation, but mere dissatisfaction does not entitle him to have his grievance pursued.  *See Vaca*, 386 U.S. at 191 (noting that while a union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," a union member does not have "an absolute right to have his grievance taken to arbitration").

Nor has Pilchman alleged facts sufficient to show that the Union acted arbitrarily when it failed to grieve the Library's delayed response to his request for an appeal of the hiring decision.  Although Pilchman was entitled to a hearing before the Library's Executive Director within fifteen business days after submitting his appeal, the Director took twenty-two business days to respond.  (Compl. ¶ 25.)  Pilchman states that the Union declined to grieve the matter because it "was not able to determine whether or not [the Director] was on vacation" when she received Pilchman's email.  Pilchman alleges that the Union's decision was arbitrary because Pilchman received a "read receipt" that indicated that the Director had received the message and because the Director "never indicated that she was on vacation or that she needed more time."  (Compl. ¶ 36.)  These factual allegations are not sufficient to show that the Union's decision was "so far outside a wide range of reasonableness . . . as to be irrational."  *O'Neill*, 499 U.S. at 67.  At best, they can be read as a challenge to the quality of the Union's investigation of the Director's delayed response.  However, a negligent or wrong assessment of a union member's grievance is insufficient to state a claim for the breach of duty of fair representation.  *Rawson*, 495 U.S. at 372; *see also Cover v. Am. Postal Workers Union-AFL-CIO*, 357 Fed. Appx. 336, 338 (2d Cir.

2009) (noting that negligence is "insufficient to meet the demanding standard" required to show breach of the duty of fair representation); *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 Fed. Appx. 40, 42 (2d Cir. 2006) ("While the Union may have committed a tactical (or even a negligent) error, such an error, even if established, does not constitute a breach of the Union's duty."). Pilchman has therefore failed to state a claim for breach of the duty of fair representation based on the Union's failure to grieve the Library's alleged violations of its promotion policy.

### 3. Failure to Seek a Promotion on Pilchman's Behalf

Pilchman alleges that the Union acted in bad faith when it "failed to even attempt to seek that [he] be promoted" to Library Information Supervisor after he met with Union representatives to discuss his failure to obtain the position. (Compl. ¶¶ 38-39.) This allegation is insufficient to state a claim for breach of the duty of fair representation because Pilchman has not pleaded any facts sufficient to demonstrate plausibly that the Union has an *affirmative obligation* to pursue promotions for employees or that he was entitled to such a promotion. *See, e.g.*, *Drakakis v. ABM Janitorial Servs.-Northeast, Inc.*, No. 09 Civ. 1884, 2011 WL 1219843, at *6-7 (S.D.N.Y. Mar. 24, 2011) (Swain, J.) (holding that union defendant's decision not to represent plaintiffs in pursuit of premium pay and transfer requests was not a breach of the duty of fair representation because plaintiffs failed to plead facts sufficient to demonstrate entitlement to such pay or transfer). If anything, Pilchman calls such entitlement into question with his allegation that the Union stated that it failed to pursue his appeal of the promotion because "'there is no entitlement to a promotion.'" (Compl. ¶ 29.) Pilchman never alleges that the Union's statement is incorrect or that he was, in fact, entitled to a promotion. In the absence of

18

any such facts, the Union's alleged failure to pursue a promotion on Pilchman's behalf is insufficient to establish a breach of the duty of fair representation.

### 4.   *Failure to Grieve the Library's Discrimination Against Pilchman*

Pilchman claims that the Union breached its duty of fair representation by discriminating against him because he is an Orthodox Jew and by failing to pursue his allegation that the Library discriminated against him on the basis of his religion.  To state a claim for breach of the duty of fair representation based on discriminatory conduct, Pilchman must allege facts sufficient to demonstrate plausibly that the Union "without a legitimate purpose, t[ook] action favoring some of its members at the expense of others."  *Ramey*, 378 F.3d at 277.  His first claim—that the Union directly discriminated against him on the basis of religion—must be dismissed because it is wholly devoid of any factual support.  He summarily states that he has been "treated in a discriminatory manner by the union" but does not allege any facts that support this claim.  (Compl. ¶ 53.)  Because Pilchman does not allege even basic details—*i.e.*, when, why, or how he was discriminated against—the Court cannot possibly "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949; *cf. Jiggetts v. Allied Int'l Union*, No. 07 Civ. 11572, 2010 WL 2158331, at *3-4 (S.D.N.Y. Mar. 17, 2010) (Ellis, J.) (finding that conclusory statements such as "[the union] discriminates against African Americans" and "another [African American] has been repeatedly written up" were insufficient bases for allegation that union engaged in discriminatory conduct).

Pilchman's second claim—that the Union failed to seek "redress for the discrimination (as an Orthodox Jewish Sabbath observer, etc.) that [he] has been subjected to by the Library"— fails for the same reason.  (Compl. ¶ 52.)  Pilchman does not allege facts sufficient to show that

the Union, as opposed to the Library, discriminated against him when it declined to pursue his grievance. According to Pilchman, after he wrote a letter to the Library's Board of Trustees alleging that the Library's Executive Director "has apparently has [sic] a pattern of behavior with Orthodox Jewish employees/communities" (Compl. ¶ 25), Union representatives asked him to provide more details in support of that claim. (Compl. ¶ 51.) Pilchman told them that "there was another employee (Orthodox Jewish) who apparently was unfairly fired by [the Director] earlier in her career." (Compl. ¶ 52.)[13]

These vague and conclusory allegations are insufficient to establish that the Library engaged in discriminatory conduct against Pilchman because he does not allege any facts that show he was personally the subject of discrimination. Even assuming, *arguendo*, that the Library discriminated against Pilchman, these allegations do not demonstrate plausibly that the *Union* discriminated against him—*i.e.*, that it declined to pursue his grievance "without a legitimate purpose" in order to "favor[ ] some of its members at the expense of others." *Ramey*, 378 F.3d at 277. Drawing all reasonable inferences in Pilchman's favor, the facts as alleged at best make it merely conceivable that the Union's decision was based upon a discriminatory motive, rather than upon an assessment that Pilchman's claim was without merit. *See Twombly*, 550 U.S. at 570 (noting that where a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed"); *see also Vaca*, 386 U.S. at 191-95 (describing the considerable discretion of unions to decline pursuit of grievances it determines have little or no merit). Without more, the Court cannot "infer more than the mere possibility of

_____

[13] Pilchman also states that the CBA provides that employees who wish to take time off for the Jewish holiday of Yom Kippur must be allowed to do so. (Compl. ¶ 54.) However, he does no more than allege the existence of this provision. He does not allege that his right under this provision was violated or that his observance of the holiday in any way formed the basis for discrimination against him.

misconduct." *Iqbal*, 129 S.Ct. at 1950.  Plaintiff has therefore failed to state a claim for relief based on the Union's failure to grieve his allegations of discrimination by the Library.

5.   *Failure to Grieve the Library's Retaliation Against Pilchman*

Pilchman alleges that the Union breached its duty of fair representation when it arbitrarily and in bad faith failed to grieve the Library's "clear retaliatory behavior."  (Compl. ¶ 26-27.)  He claims that, in retaliation for appealing the Library's decision to not promote him to Library Information Supervisor, the Library (1) gave him the unsatisfactory service rating, and (2) barred him from seeking further promotions for one year.  (Compl. ¶ 21, Ex. 1 at 1.)  Again, Pilchman's allegations fail to demonstrate a plausible claim for relief.

Insofar as Pilchman claims that the Library breached its duty by failing to grieve the allegedly retaliatory rating, his own factual allegations defeat that claim.  He states that the Union "did compose and submit a grievance about the service rating."  (Compl. ¶ 40.) Moreover, as of the time the instant motion was filed, the grievance was scheduled to go to arbitration.  (Pl. Opp. Mem. at 18; Def. Mem. at 3.)  Pilchman therefore cannot legitimately state a claim based on the Union's failure to grieve the service rating.

With respect to the Library's failure to grieve the one-year ban on seeking a promotion, Pilchman states that the Union determined that the ban was not an "example of retaliation by the Library."  (Compl. ¶ 26.)  Pilchman has not alleged any facts that show that this was an irrational determination or that it was made in bad faith, nor has he alleged any facts to demonstrate that the Library's ban was retaliatory.  Pilchman states only that he received an email from the Library notifying him of the ban one day after he received his unsatisfactory service rating.  He does not allege a single fact to demonstrate that the ban was imposed because he appealed the Library's decision to hire a different candidate for Library Information Supervisor.  Because the

21

Court cannot find any basis to support the underlying claim of retaliation by the Library, it cannot infer any basis for the claim that the Union's decision not to pursue Pilchman's grievance was arbitrary or in bad faith.

### 6. *Insufficient Time to Appeal the Unsatisfactory Rating*

Pilchman alleges that the Union breached its duty of fair representation when it in bad faith told the Library that Pilchman would submit the rebuttal of his unsatisfactory service rating in two weeks, even though the "long standing protocol" for completing such a rebuttal is thirty days.  (Compl. ¶ 28, 30.)  Once again, Pilchman has not alleged any facts to suggest that the Union acted in bad faith other than his summary conclusion that "the Union's performance was in bad faith."  (Compl. ¶ 30.)  *See Stoner*, 772 F. Supp. at 806-07 ("[C]onclusory allegations of 'bad faith' are insufficient to survive a motion to dismiss.  Rather, the complaint must state some set of facts from which it may be inferred that the [defendant's] actions might have been motivated by an improper purpose.").  The fact that the Union agreed that Pilchman would submit his rebuttal in less time than is customarily given is not, standing alone, sufficient to show that the Union engaged in "intentionally misleading conduct," *Spellacy*, 156 F.3d at 126, or "fraudulent, deceitful, or dishonest action."  *White*, 237 F.3d at 179 (citations omitted).  Moreover, Pilchman does not allege that he was injured by the shortened response period.  To the contrary, he has attached his rebuttal to his Complaint in support of his allegations and has consistently maintained that it is "reliable" (Pl. Opp. Mem. at 7-8).  Without more, these facts do not sufficiently support Pilchman's claim.

### 7. *Failure to Inform Pilchman of Second Page of Grievance Form*

Pilchman alleges that the Union breached its duty of fair representation when it arbitrarily and in bad faith failed to inform him that a grievance form it submitted on his behalf was two

22

pages instead of one.[14]  (Compl. ¶¶ 41-45.)  Again, to state a claim for relief, Pilchman must

plausibly demonstrate that the Union's conduct was "so far outside a wide range of

reasonableness . . . as to be irrational," *O'Neill*, 499 U.S. at 67, or was "intentionally

misleading." *Spellacy*, 156 F.3d at 126.  However, Pilchman does not allege even one fact to

show that the Union's failure to show him both pages was irrational or deceitful—or that the

conduct was anything but negligent, at worst—which is, as the Court has noted, insufficient to

state a claim for breach of the duty of fair representation.  *See Rawson*, 495 U.S. at 371-72.

Pilchman also alleges that the Union, through general counsel Sykes, acted in bad faith

by "taking the side of one union member – Eileen Muller, against that of another union member

(i.e., [Pilchman])" by stating, without personal knowledge, that "Mr. Pilchman was shown both

pages, and he read both pages, in the presence of his union representative, prior to signing the

grievance."  (Compl. ¶ 47.)  Notwithstanding his summary conclusion that the Union's conduct

was in bad faith, Pilchman has failed to allege any facts to show that Sykes sided with Muller

"with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126.  To the contrary, he

appears to claim that the act of agreeing with one union member over another union member

constitutes bad faith *per se* (Compl. ¶ 47 ("We clearly seem to have a situation where Steven

Sykes is purportedly representing Eileen and Robert Pilchman – but never explained what

problems may result.").)  Pilchman does not cite, and the Court is unaware of, any authority for

this proposition.

Pilchman's Complaint fails to proffer any facts to show that any of the above-described

actions "remotely approach[es] the onerous standards of irrationality, unlawfulness or deceit

---

[14] As a threshold matter, the Complaint does not clearly explain the significance of the second
page.  Pilchman alleges that the page contained the phrase "where performance is not up to
standard," but he does not explain the import of that phrase.  (Compl. ¶ 45.) The Court interprets
Pilchman's allegation as a claim that the Union's conduct deprived him of being fully informed
of the content of the grievance form.

necessary" to state a claim for the breach of the duty of fair representation.  *Tucker*, 451 F. Supp.

2d at 595.  The Court therefore grants the Union's motion to dismiss for failure to state a claim

for breach of the duty of fair representation.

### C. <u>Breach of the Collective Bargaining Agreement</u>

#### a.  *Applicable Law*

To properly allege a breach of contract claim under New York law, a plaintiff must

allege: (1) the existence of an agreement between itself and the defendant; (2) performance of the

plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4)

damages to the plaintiff caused by that defendant's breach.  *See Eternity Global Master Fund*

*Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).  A plaintiff "may not

assert a cause of action to recover damages for breach of contract against a party with whom it is

not in privity."  *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997)

(Chin, J.).

A CBA is a contract between an employer and a labor union that regulates employment

conditions, wages, benefits, and grievances.  *See Black's Law Dictionary* (9th ed. 2009).

Although an employee is not a party to a CBA, he or she has standing to bring claims against a

union for breach of that agreement if the union "assume[s] a responsibility towards employees by

accepting a duty of care through [the] contractual agreement."  *Rawson*, 495 U.S. at 374

(citations omitted).  Absent an explicit indication that a union meant to contractually adopt such

a duty, an employee lacks standing to sue for breach of a CBA.[15]  *Id.* (noting that an employee

---

[15] An employee may also bring a claim against his union for breach of a CBA as a third-party beneficiary, provided the employer has an "enforceable right as promisee" to the CBA.  *Rawson*, 495 U.S. at 375.  However, Pilchman has not alleged that he is a third-party beneficiary to the CBA, and neither party has raised the issue in its briefing.

"must be able to point to language in the collective bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees").

### b.   Application of Law to Facts

Pilchman alleges that the Union breached the CBA by failing to "investigate, grieve, mediate, and arbitrate any employment claims pursuant to the CBA." (Compl. ¶ 61.)  The Court holds that the Complaint fails to state a claim for breach of the CBA because Plaintiff does not have standing to enforce the agreement.  Pilchman incorrectly states that "plaintiff and defendant entered into a collective bargaining agreement." (Compl. ¶ 11.)  The CBA at issue is a contract between the Library and the Union; Library employees are not parties to the agreement. (Def. Mem. Ex. 2.)  Because Pilchman is not a party to the CBA, he must, consistent with *Rawson*, "point to language in the collective bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees." 495 U.S. at 374. Pilchman has failed to make this showing.  The CBA does not contain a single provision that purports to confer on employees the ability to enforce the union's obligations (*See* Def. Mem. Ex. 2).  Pilchman therefore lacks standing to enforce an alleged breach of the CBA.[16]  For this reason, the Union's motion to dismiss the breach of CBA claim is GRANTED.

## IV.  Leave to Amend

Pilchman requests leave to file a Third Amended Complaint.  (*See* Pl. Opp. Mem. at 15.) Pilchman seeks only to incorporate e-mails between himself and Union representatives in October and November of 2010 and "evidence [that shows] that the union should win [the]

---

[16] The Court notes that had Pilchman brought a hybrid § 301/fair representation action, he would have had standing to allege a breach of the CBA by his employer (as opposed to his union).  *See DelCostello*, 462 U.S. at 164-65; *see also* footnote 9, *supra*.  However, this would be of little help to Pilchman, since his failure to allege facts sufficient to state a claim for a breach of the duty of fair representation by the Union would separately defeat the action.

arbitration" of his March 2010 grievance.[17]  (Pl. Opp. Mem. at 15-19.)  For the following

reasons, the Court denies Pilchman leave to file a Third Amended Complaint.

### A. **Applicable Law**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend "shall be freely

given when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S.

178, 182 (1962).  However, leave to amend should be denied where there is an "apparent or

declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman*,

371 U.S. at 182.  An amendment to a pleading may be considered futile where it would not

withstand a motion to dismiss pursuant to Rule 12(b)(6). *Dougherty v. N. Hempstead Bd. of*

*Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 20002) (citations omitted).

### B. **Application of Law to Facts**

The Court denies Pilchman's motion for leave to amend on the ground that amendment

would be futile.[18]  Pilchman states that his proposed Third Amended Complaint will "rely on"

the eight new exhibits described above in Section II.B, *supra*, which are primarily e-mails

between himself and Union representatives from October to November 2010.  (*See* Pl. Opp.

Mem. at 15.)  In these emails, Pilchman renews his conclusory allegations against the Union,

---

[17] Pilchman also seeks to leave to amend in order to obtain a "right to sue letter" that would enable him to join the Library as a defendant if this Court finds that the Library is a necessary party pursuant to Rule 12(b)(7).  Because the Court grants the Union's motion to dismiss pursuant to Rule 12(b)(6), it need not address the Union's Rule 12(b)(7) argument.  As a result, Pilchman does not need to amend his Complaint to include the Library as a defendant.

[18] The Union argues that Pilchman's motion should be denied on grounds of undue delay and unfair prejudice. (*See* Reply Mem. of Law in Further Support of Defendants' Mot. to Dismiss (hereinafter "Def. Reply") at 9-10.)  Because the Court denies leave to amend on the ground of futility, it will not address these arguments.

which are no more substantive or supported than those set forth in his Second Amended Complaint. Pilchman's proposed amendments would not cure the deficiencies extant in his current Complaint. Were he to amend his Complaint a third time to include these eight exhibits, the Complaint would still not withstand a motion to dismiss. *See Dougherty*, 282 F.3d at 88. Pilchman has not indicated that there are any documents beyond these eight emails that he could add to a revised Complaint in order to meet the plausibility threshold required under *Twombly* and *Iqbal*. After careful review and consideration of the complaints, documents, and briefing that Pilchman has already offered in support of his claims, the Court finds that leave to replead would be futile. Therefore, Pilchman's request for leave to file a Third Amended Complaint is DENIED.

## V. Conclusion

For the foregoing reasons, the Court GRANTS with prejudice the Unions' motion to dismiss pursuant to Rule 12(b)(6) and DENIES Pilchman's request for leave to file a Third Amended Complaint. Because the Court dismisses both claims on Rule 12(b)(6) grounds, it need not address the Unions' motion to dismiss pursuant to Rule 12(b)(7). The Clerk of Court is directed to close this case. Any pending motions are moot.


SO ORDERED.

Dated: New York, New York
       September 29, 2011

_Kimba M. Wood_
Kimba M. Wood
United States District Judge